IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RUBEN IVAN FULLER,
      Petitioner,

vs.                               Case No.:  5:09cv344/RS/EMT

KENNETH S. TUCKER,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 32).  Petitioner filed a reply (doc. 37).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 32).[2]  Petitioner was charged in the Circuit Court in and for Bay County, Florida, Case No. 06-2476-CF, with one count of sale or delivery of cocaine or possession with

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss, who succeeded Walter A. McNeil, as Secretary for the Department of Corrections.  Secretary Tucker is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 32).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

intent to sell or deliver cocaine (Ex. A).  Following a jury trial, he was found guilty as charged (Exs. C, D).  Petitioner was  adjudicated guilty and sentenced to six (6) years of imprisonment followed by six (6) years of probation, with pre-sentence jail credit of 120 days (Exs. I, J).  Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA") (Exs. K, L).  The First DCA affirmed the judgment per curiam without written opinion on June 9, 2008, with the mandate issuing June 25, 2008 (Ex. N).  Fuller v. State, 982 So. 2d 688 (Fla. 1st DCA 2008) (Table).

On November 17, 2008, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. O).  The state circuit court summarily denied the motion (Ex. Q).  Petitioner appealed the decision to the First DCA, Case No. 1D09-1964 (Ex. R).  The First DCA affirmed the decision per curiam without written opinion on August 13, 2009, with the mandate issuing September 9, 2009 (Ex. S).  Fuller v. State, 14 So. 3d 1006 (Fla. 1st DCA 2009) (Table).

Petitioner filed the instant federal habeas action on October 13, 2009 (doc. 1).  Respondent concedes the habeas petition is timely (doc. 32 at 4).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

 The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).   Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that

the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

A.   Ground One:  "The verdict form was errorneous [sic] and compromised the jury's ability to render a unanimous verdict."

Petitioner contends his Fourteenth Amendment right was violated because the jury's verdict may not have been unanimous where the jury instructions and verdict form permitted conviction based on alternative forms of conduct (doc. 1 at 4). He contends the single-count information improperly charged him with multiple offenses, namely, sale or delivery of cocaine or possession with intent to sell or deliver cocaine (*id.*). He alleges the verdict form mirrored the information, thus permitting jurors to find him guilty of either sale of cocaine, delivery of cocaine, possession with intent to sell cocaine, or possession with intent to deliver cocaine, without unanimously agreeing which act he committed (*id.*). Petitioner asserts he raised this claim on direct appeal of his conviction (*id.*).

Respondent concedes that it "appears" Petitioner "may have" exhausted this claim by presenting it on direct appeal of his conviction, but Respondent expressly states he is not waiving the exhaustion defense (doc. 32 at 7–9). Respondent asserts the First DCA adjudicated the claim on the merits, and the adjudication is entitled to deference under the AEDPA (*id.* at 8–14).

1.      Clearly Established Federal Law

"[C]onviction by a nonunanimous six-member jury in a state criminal trial for a nonpetty offense deprives an accused of his constitutional right to trial by jury." Burch v. Louisiana, 441 U.S. 130, 134, 99 S. Ct. 1623, 60 L. Ed. 2d 96 (1979).   However, a conviction under jury instructions that did not require the jury to agree on one of alternative theories of commission of an offense does not violate the Constitution.  *See* Schad v. Arizona, 501 U.S. 624, 644–45, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991); *see also* U.S. v. Verbitskaya, 406 F.3d 1324, 1332–34 (11th Cir. 2005) (in prosecution for unlawfully obstructing, delaying and affecting interstate and foreign commerce by extortion, district court's failure to instruct jury to unanimously agree on which of government's four alternative theories of how interstate commerce was affected by defendants' extortion scheme did not violate Sixth Amendment right to unanimous jury).   Additionally, a general verdict may be upheld where the jury is instructed on alternative theories of guilt, even if one but not all of the particular theories charged is factually inadequate, that is, there is insufficient evidence to support a conviction on one, but not every, ground charged.  *See* Griffin v. United States, 502 U.S. 46, 58–59, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991).

2.      Federal Review of State Court Decision

The information charged Petitioner with violating Florida Statutes § 893.13 as follows:

COUNT I:  Rubin Ivan Fuller on or about July 18, 2006, in the County of BAY and the State of Florida, did unlawfully and knowingly sell, manufacture, deliver or possess with intent to sell, manufacture, or deliver of [sic] Cocaine, a controlled substance as defined in Section 893.03, contrary to Florida Statute 893.13(1)(a).

(Ex. A).[4]

During trial, on the defense's motion and with the State's consent, the alternative charge of manufacturing and possession with intent to manufacture was ordered stricken (Ex. C at 171–72). With respect to the elements of the crime, the jury was instructed as follows:

---

[4] With respect to cocaine, section 893.13 provides, in relevant part:

. . . it is unlawful for any person to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance.

Fla. Stat. § 893.13(1)(a)1. (2006).

To prove the crime of sale, delivery, or possession with intent to sell or deliver cocaine, the State must prove the following three elements beyond a reasonable doubt.  First, Ruben Fuller sold or delivered or possessed with the intent to sell or possessed with the intent to deliver a certain substance.  Two, the substance was cocaine.  Three, Ruben Fuller had knowledge of the presence of the substance.

(Ex. C at 198–99).  The jury was also instructed:

> **. . . Whatever verdict you render must be unanimous, that is, each juror must agree to the same verdict.**
>
> . . . Your verdict must be based on the evidence and on the law contained in these instructions. . . .  You may find the defendant guilty as charged in the Information or guilty of such lesser included crime as the evidence may justify or not guilty.  If you return a verdict of guilty it should be for the highest offense which has been proven beyond a reasonable doubt.  If you find that no offense has been proven beyond a reasonable doubt then, of course, your verdict must be not guilty.
>
> **Only one verdict may be returned as to the crime charged.  This verdict must be unanimous, that is, all of you must agree to the same verdict.**  The verdict must be in writing and for your convenience the necessary verdict form has been prepared for you.  It reads: We, the jury, find as follows as to the Defendant, Ruben Ivan Fuller, in this case. Count I, check only one. (A) the Defendant is guilty of sale or delivery of cocaine or possession with the intent to sell or deliver cocaine, as charged.  And (B) the Defendant is guilty of lesser included offense of possession of cocaine.  (C) the Defendant is not guilty.  Check only one.  So say we all, a date and a signature by the foreperson.

(Ex. C at 206–07) (emphasis added).

The verdict form utilized by the jury read, and was marked, as follows:



**WE, THE JURY**, find as follows as to the Defendant, Rubin Ivan Fuller, in this case.

Count I

(Check Only One)

✔ A)        The Defendant is guilty of Sale or Delivery of Cocaine or Possession with the intent to sell or deliver Cocaine as charged.

____B)        The  Defendant is guilty of the lesser included offense of Possession        of Cocaine.

____C)        The Defendant is not guilty.

(Check Only One)

**SO SAY WE ALL.**

(Ex. D).  The trial transcript shows that after the verdict was read, the clerk called out each juror's name, and each answered that the verdict was his or hers (Ex. C at 210).

On direct appeal, Petitioner argued the trial court erred by allowing a verdict form which compromised the jury's ability to render a unanimous verdict (Ex. L at 15–19).  Petitioner conceded the error was not preserved below but argued it rose to the level of fundamental error (*id.*). Petitioner argued he was constitutionally entitled to a unanimous verdict (*id.* at 16).  In support of this argument, he cited Flanning v. State, 597 So. 2d 864 (Fla. 3d DCA 1992), which recognized that the federal Constitution and long-standing legal practice in Florida required a unanimous jury verdict (*id.*).  Petitioner argued the single-count information embraced two separate offenses, albeit in violation of the same statute; therefore, the jury could not convict unless its verdict was unanimous as to at least one specific act (*id.*).  He argued the verdict form allowed the jury to check a single box to indicate guilty as charged, rendering it impossible to know of what crime the jurors convicted him and whether the guilty verdict was unanimous as to any of the offenses charged (*id.*). He argued it was possible that some jurors believed he was guilty of sale of cocaine, while others believed he was guilty of delivery of cocaine, while others believed he was guilty of possession with intent to sell cocaine or possession with intent to deliver cocaine (*id.*).  He argued the error vitiated the entire trial (*id.*).  The appellate court affirmed the judgment of conviction per curiam without written opinion.

As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill,  633 F.3d at 1287 (citing Harrington, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in

determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

The First DCA's decision could have been supported by the theory that the general verdict form tracked the statutory language of section 893.13(1)(a) (as did the charging document).  Further, the jury instructions correctly stated the elements of the crime and the State's burden of proof, and the instructions advised the jury of the unanimity requirement.  The jury was instructed that to find Petitioner guilty, it must unanimously find beyond a reasonable doubt that he sold cocaine or delivered cocaine or possessed cocaine with the intent to sell it or possessed cocaine with the intent to deliver it.  The trial court was not constitutionally required to instruct the jury that they must agree on one of the alternative theories of commission of the crime.  *See* Schad, 501 U.S. at 644–45; Verbitskaya, 406 F.3d at 1332–34; Sims v. Singletary, 155 F.3d 1297, 1313 (11th Cir. 1998) (rejecting habeas petitioner's contention that trial court erred in permitting jury to return jury to return general verdicts on allegedly multiple and inconsistent counts of first degree murder; jury did not need to agree on precise theory of first degree murder, only the offense itself).  Moreover, Petitioner does not argue that the evidence was insufficient to sustain his conviction as to any one of the alternative forms of conduct charged, and even if he asserted that argument, the trial transcript demonstrates there was ample evidence to support the verdict as to any of the listed means by which Petitioner violated the statute—the case involved a single controlled drug sale between Petitioner and a confidential informant, during which Petitioner directly gave the informant two crack cocaine rocks in exchange for $50.00 in marked U.S. currency (*see* Ex. C at 19–170).

It is possible that fairminded jurists could disagree that the aforementioned arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  Therefore, Petitioner failed to establish that the state court's denial of his constitutional claim was contrary to or an unreasonable application of clearly established federal law.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292.

> B.      Ground Two:  "Trial counsel failed to secure an impartial jury for trial."

Petitioner contends trial counsel rendered ineffective assistance by failing to challenge a juror who admitted "impartialness and unconcern" and served on the jury panel (doc. 1 at 4).  He asserts he raised this claim as Ground I in his Rule 3.850 motion (*id.*).

Respondent argues the claim was exhausted only to the extent it is the same claim Petitioner presented in Ground I of his Rule 3.850 motion, that is, counsel was ineffective for failing to have "Juror Slusser" removed from the venire by peremptory challenge or challenge for cause (doc. 32 at 14–15).  Respondent contends Petitioner failed to establish the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 15–19).

      1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would

have done so." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  <u>Jones</u>, 436 F.3d at 1293 (citing <u>Strickland</u>, 466 U.S. at 690); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  <em>Id.</em> (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high.  <em>See</em> <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  <em>Id.</em> (quoting <u>Strickland</u>, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  <u>Strickland</u>, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

<em>Id.</em> at 694.  Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  <em>Id.</em> at 695.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), <u>Strickland</u> prejudice is gauged against the outcome of the trial,

not on appeal.  *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.       Federal Review of State Court Decision

Petitioner raised this claim as Ground I in his Rule 3.850 motion (Ex. O at 3–9).  He asserted that during voir dire, the following exchanges occurred between counsel and Jessica Slusser:

> MR. KELLEY [the prosecutor]:       .  .  .  Ms. Slusser, would you have difficulty setting aside everything you've seen on t.v. and viewing the facts and the evidence involved in this case and follow the law as the judge instructs you.

> JESSICA SLUSSER:  (Nods head affirmatively)

> MR. KELLEY:         Let me ask you, when you're watching those shows you realize that a lot of the things that you see on C.S.I. Miami don't actually exist.

> JESSICA SLUSSER:  I have no idea.

. . . .

> MR. WHITE [defense counsel]:       Does that have anything to do, Ms. Slusser, what does the presumption mean to you?

> JESSICA SLUSSER:  I don't know.

> MR. WHITE:  Do you care?

> JESSICA SLUSSER:  Huh-huh (no).

(*id.* at 4–5).  Petitioner contended Ms. Slusser's responses constituted "admitted impartialness and unconcern" and unmistakably demonstrated "dumbfounded partialness, confusion, and bias" (*id.* at 3–5).  He argued her responses "explicitly warned the court that she would have difficulty following the law as the Judge instructs" and she "did not care what the law of presumption mean [sic]" (*id.* at 3–5).  Petitioner additionally argued counsel misadvised him that they had no option but to select Ms. Slusser from the venire (*id.* at 7).

The state circuit court found as fact that Ms. Slusser answered "yes" to a question asking whether she could be fair and impartial (identified by the court as "question number twelve"), and Ms. Slusser answered "no" when asked whether she would have any difficulty being fair and impartial in the case  (Ex. Q at 332).  The court also found that defense counsel had already exercised six peremptory challenges when Ms. Slusser came on the six-member prospective jury (*id.*).  The court determined there was no basis for a challenge for cause as to Ms. Slusser (*id.*).  Additionally, the court found that Petitioner participated in the jury selection process and indicated the jury was acceptable to him (*id.*).  The court concluded Petitioner failed to show error on the part of counsel or any resulting prejudice (*id.*).

Petitioner appealed the state circuit court's decision to the First DCA.  The appellate court affirmed per curiam without written opinion.

The state circuit court correctly applied the Strickland standard in adjudicating all of Petitioner's ineffective assistance of counsel claims (Ex. Q at 333).  Therefore, Petitioner is not entitled to habeas relief unless he demonstrates the state court's decision was based upon an unreasonable determination of the facts or was an unreasonable application of Strickland.

Initially, Petitioner took Ms. Slusser's responses out of context.  The full context of her allegedly partial and biased responses was the following:

> MR. KELLEY [the prosecutor]:  Would you think that these legal dramas they have on t.v. accurately reflect our criminal justice system any better than the medical dramas?  Can we all agree to set aside whatever we have seen on t.v. about the criminal justice system and recognize these dramas for what they are? Which is, quite frankly, entertaining?
>
> Ms. Slusser, would you have difficulty setting aside everything you've seen on t.v. and viewing the facts and the evidence involved in this case and follow the law as the judge instructs you.
>
> JESSICA SLUSSER:  (Nods head affirmatively)
>
> MR. KELLEY:  Let me ask you, when you're watching those shows you realize that a lot of the things that you see on C.S.I. Miami don't actually exist.
>
> JESSICA SLUSSER:  I have no idea.
>
> . . . .

MR. WHITE [defense counsel]:  Does that have anything to do, Ms. Slusser, what does the presumption mean to you?

JESSICA SLUSSER:  I don't know.

MR. WHITE:  Do you care?

JESSICA SLUSSER:  Huh-huh (no).

MR. WHITE:  You would rather not be here, right?  When you first got your jury summons, what did you think?  Oh, my gosh, what can I do to get out of this?

JESSICA SLUSSER:  No, I had to reschedule [jury duty] already and this is the next one.  So, just wanted to spend the day with my kids.

(Ex. B at 123–24, 164–65).

Further, as found by the state court, the record reflects that upon specific inquiry, Ms. Slusser twice responded as a prospective juror that she could be fair and impartial (Ex. B at 118, 127).  In so finding with respect to one such instance, the court found that Ms. Slusser answered "yes" to "question number twelve" (Ex. Q).  This is in reference to a series of questions listed on a poster board in open court to which the prospective jurors announced their answers on the record (Ex. B at 112–21).  Although it is clear from the prospective juror's responses that twelve (12) such questions were presented (*id.* at 113–21), only eleven (11) questions appear in the transcribed record, with question number 11 represented as:  "Do you believe you can be fair and impartial?" (*id.* at 112).  Reference to the various prospective juror's responses confirms this to be an error in transcription (*id.* at 113–21).  The context of the prospective juror's answers reveal that, as found by the state court, the question presented as number twelve inquired whether each juror could be fair and impartial (*id.* 112–21).  Petitioner has not presented clear and convincing evidence rebutting the state court's finding as to the content of question number twelve, and this finding is not objectively unreasonable in light of the record.  Therefore, this factual finding, is entitled to deference under the AEDPA.  *See* Miller-El, 537 U.S. at 340; 28 U.S.C. § 2254(e).

Additionally, this court must defer to the state court's determination that no legal basis existed for challenging Ms. Slusser for cause under Florida Statutes section 913.03.  *See* Bradshaw

v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S.

684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).

Further, the record demonstrates that Petitioner participated in the jury selection process and

indicated the jury was acceptable to him.  Prior to commencement of jury selection, the trial court

personally addressed Petitioner as follows:

> Mr. Fuller, we're going through the jury selection process.  Right now the
> first six people in the order they were called up is the jury.  Any time one of those
> six people is excused the next person in line takes that person's place.  You can
> always go back and what we call backstrike, go back and take off those in the box.
> Any time you need to talk to Mr. White in private, let us know, we will give you that
> opportunity to talk to him in private.

(Ex. B at 174).  Jury selection commenced, with the prosecutor exercising two peremptory

challenges (Ms. Menchion and Ms. Wiley), and defense counsel challenging three jurors for cause

(Mr. Windsor, Mr. Lyda, and Mr. Matheson) (id. at 175).  Defense counsel then exercised a

peremptory challenge (Ms. Taylor) and after consulting with Petitioner regarding the next potential

juror (Mr. Cox), exercised a peremptory on him as well (id. at 175–76).  Defense counsel challenged

another juror for cause (Caraker) (id. at 176).  The prosecutor exercised two more peremptory

challenges (Ms. Collins and Ms. Donnerstag), and defense counsel exercised three (Hoover,

Kirkland, and Myers) (id. at 176–77).  The prosecutor exercised his fifth peremptory challenge (Mr.

Kinard), and defense counsel exercised the defense's sixth peremptory (Ms. Baker) (id. at 178).  At

that point Ms. Slusser was added to the panel of six prospective jurors (id.).  No one, including

Petitioner, indicated dissatisfaction with Ms. Slusser (id. at 178–79).  The parties discussed Ms.

Collins (against whom the prosecutor had exercised a peremptory challenge) as an alternate:

> MR. KELLEY [the prosecutor]: Trying to think, Collins, Wiley, one of those
> you should be able to agree on [as an alternate].
>
> THE DEFENDANT:  For real, I'm telling the truth, man, they didn't say
> nothing [sic].
>
> MR. KELLEY:  Agree to Collins as an alternate?
>
> MR. WHITE:  Mr. Fuller already indicated he would agree to Mr. [sic]
> Collins as an alternate, is that right?  So we would stipulate, Judge, that even though,
> even though Ms. Collins–

THE COURT: – was struck by the state.

MR. WHITE:  He's agreed to accept her as an alternate.  And we would also agree.

THE COURT:  Okay, so we have the jurors right now, Mr. Fuller, is Monica, Thweatt, Cain, and, Christensen, Slusser would be the six jurors.  And then . . . Ms. Collins would be the alternate juror . . . Okay?  You've had a chance to sit through this process, you've had a chance to talk to Mr. White in private.  At this time is this jury acceptable to you?

THE DEFENDANT:  Yes, sir.

(*id.* at 179).

As the state court determined, defense counsel had no basis to strike Ms. Slusser for cause. Further, Petitioner failed to show he communicated to defense counsel or the court that he was dissatisfied with Ms. Slusser, nor does the record suggest counsel otherwise should have known that Ms. Slusser was less desirable than any of the six jurors whom the defense had peremptorily challenged prior to Ms. Slusser's joining the proposed jury.  Moreover, Florida law prohibits a defendant from withdrawing a peremptory challenge and then "backstriking" a previously accepted juror.  *See* Davis v. State, 922 So. 2d 454 (Fla. 4th DCA 2006); *see also* Hunter v. State, 660 So. 2d 244, 248–49 (Fla. 1995) (defendant was not prejudiced by trial court's refusal to allow backstriking because defense counsel had exhausted alloted peremptory challenges when opportunity to backstrike arose).  Therefore, Petitioner failed to show counsel acted unreasonably by allowing Ms. Slusser on the jury.  He additionally failed to show he was prejudiced by counsel's alleged error. Therefore, the state court did not unreasonably apply Strickland in denying this claim.

C.    Ground Three:  "Trial counsel failed to object and file a pre-trial in limine motion not to publish any evidence of previous contact between Mr. Fuller and the 'C.I.'"

Petitioner contends defense counsel performed ineffectively by failing to file a motion in limine to exclude evidence of prior contact between Petitioner and Paula Bequette, the confidential informant, on the ground that it constituted collateral crime evidence (doc. 1 at 5).  He contends the evidence that he and Ms. Bequette had over fifteen previous meetings was prejudicial in that it suggested he was involved in prior drug dealings (*id.*).  Petitioner states he raised this claim as Ground II in his Rule 3.850 motion (*id.*).

Respondent asserts Petitioner presented a similar claim in Ground II of his Rule 3.850 motion, and presuming Petitioner intends to raise the same claim, it appears to be exhausted (doc. 32 at 20).  Respondent contends Petitioner failed to establish the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 20–23).

1.     Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground II in his Rule 3.850 motion (Ex. O at 9–12).  He asserted the prosecutor notified the court prior to trial that he intended to present testimony from the confidential informant ("C.I.") regarding her familiarity with Petitioner's voice as proof that Petitioner was the person with whom the C.I. arranged the controlled drug buy (*id.* at 9).  Petitioner argued defense counsel should have filed a motion in limine to exclude such evidence, on the ground that it was prohibited by Florida Statutes section 90.404 (*id.* at 9–10).  Petitioner asserted he was prejudiced by counsel's omission, because the jury heard evidence that the C.I. had come into contact with him fifteen times before the controlled buy, the C.I. had spoken to him ten or fifteen times prior to the buy, and the C.I. had previously seen him ten times at the residence where the controlled buy occurred, which suggested he and the C.I. had previous drug dealings (*id.* at 10–12).

The state circuit court found as fact that prior to trial, the State informed the court that the State had told the C.I., Ms. Bequette, not to discuss any previous drug deals between herself and Petitioner, and not to mention any prior unlawful activity of Petitioner (Ex. Q at 332).  The court additionally found that the trial court warned the C.I. to limit her testimony to the specific incident that resulted in the instant charge against Petitioner (*id.*).  The court found that the State advised the trial court that the C.I. would be asked whether she had any prior contact with Petitioner in order to establish a foundation for the C.I.'s recognizing Petitioner's voice on the telephone (*id.*).  The court found that the C.I. followed the admonishments of the State and the trial court by not testifying as to any prior drug transactions between her and Petitioner (*id.* at 333).  The court determined that all other testimony was necessary to establish that the C.I. knew it was Petitioner on the telephone at the residence where the controlled buy occurred (*id.*).  The court determined that Petitioner failed

to sufficiently allege error by defense counsel or that any prejudice resulted from the alleged error (*id.*).

The trial transcript supports the state court's factual findings as to the prosecutor's and the trial court's admonishments to the C.I.:

> MR. KELLEY:  Judge, one matter before we start trial, I admonished Ms. Bequette, who is our CI, I admonished her to stay out of any previous sales between the Defendant and herself of controlled substances, um, and I believe she understands that that would mean trying the case twice.  Um, I ask the Court to admonish her to stay out of, not to mention any prior unlawful activity of the Defendant.

> THE COURT:  . . . And ma'am, in your case the Information charges Mr. Fuller with a crime that's alleged to have occurred on July 18th of 2006 involving the alleged sale, manufacture, deliver [sic], possession with intent to sell, manufacture, deliver cocaine, so that's the incident, and as counsel indicated, unless questions are asked about something different we need to stay in that timeframe [sic].

(Ex. C at 4–5).

The trial transcript shows that Ms. Bequette testified that prior to the controlled buy at issue, she had known Petitioner for six months, come into contact with him approximately fifteen times, spoken with him over the telephone ten or fifteen times, and seen Petitioner at the residence where the controlled buy occurred approximately ten times (Ex. C at 76, 80, 83).  This evidence was relevant to prove that Petitioner was the person at the other end of the telephone when the C.I. arranged the controlled drug buy, and Petitioner was the person from whom the C.I. bought the cocaine.  Therefore, it was admissible under Florida Statutes section 90.404(2)(a).  Petitioner failed to show that defense counsel's failure to seek exclusion of the evidence was unreasonable, or that there is a reasonable probability the evidence would have been excluded had counsel sought its exclusion.  Therefore, the state court's denial of Petitioner's claim was a reasonable application of Strickland.

> D.    Ground Four:  "Trial counsel failed to object thus perserving [sic] when the State shifted the burden [by] commenting on his failure to testify."

Petitioner contends defense counsel performed ineffectively by failing to object to the prosecutor's closing argument on the ground that he shifted the burden of proof to the defense by

rhetorically asking the jury if they heard any testimony from the defense (doc. 1 at 5).  He states he raised this claim as Ground III in his Rule 3.850 motion (*id.*).

Respondent asserts Petitioner presented a similar claim in Ground III of his Rule 3.850 motion, and presuming Petitioner intends to raise the same claim, it appears to be exhausted (doc. 32 at 24).  Respondent contends Petitioner failed to establish the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 24–27).

> 1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

> 2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground III in his Rule 3.850 motion (Ex. O at 13–15).  He asserted the following comment by the prosecutor was an improper comment on his failure to testify and improperly shifted the burden of proof to the defense:

> . . . did you hear any testimony from anybody that as Mr. Fuller approached the car—well, maybe he was selling fifty dollars worth of stuff, did you hear any testimony of anything other than the money in his pocket, the cocaine in the car, and buy money from back in the vehicle?

(*id.* at 13).

The state circuit court determined that, viewing the prosecutor's comment in light of defense counsel's closing argument and the record, the comment was not a comment on Petitioner's failure to testify and did not shift the burden of proof (Ex. Q at 333).  The court further determined the prosecutor's comment was a fair response to defense counsel's closing argument (*id.*).  Therefore, Petitioner failed to sufficiently allege error on the part of defense counsel or any prejudice resulting from the alleged error (*id.*).

The Fifth Amendment prohibits commenting on the defendant's  silence at trial and asking the jury to draw an adverse inference from that silence.  *See* United States v. Robinson, 485 U.S. 25, 32, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1988); Griffin v. California, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965).

> The Fifth Amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's failure to testify.  A prosecutor's statement violates the defendant's

> right to remain silent if either (1) the statement was manifestly intended to be a comment on the defendant's failure to testify, or (2) the statement was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.  The question is not whether the jury possibly or even probably would view the remark in this manner, but whether the jury necessarily would have done so.

United States v. Blankenship, 382 F.3d 1110, 1128 (11th Cir. 2004) (quoting United States v. Knowles, 66 F.3d 1146, 1162–63 (11th Cir. 1995)).

Ineffective assistance of counsel may be established where defense counsel fails to object to the prosecutor's arguments which invite the jury to consider constitutionally protected silence as evidence of the defendant's guilt, see Fugate v. Head, 261 F.3d 1206, 1223 (11th Cir. 2001), arguments which voice a personal opinion based upon evidence that was not presented to the jury, see United States v. Granville, 716 F.2d 819, 822 (11th Cir. 1983), or arguments which shift the burden of proof to the defense, see United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992).  To determine whether the prosecutor intended to comment on Petitioner's failure to testify, the comments must be examined in context.  See United States v. Young, 470 U.S. 1, 11, 105 S. Ct. 1039, 1044, (1985); Baxter v. Thomas, 45 F.3d 1501, 1508 (11th Cir. 1995) (quotations and citation omitted).  If the prosecutor's remarks were "invited," and did no more than respond substantially in order to "right the scale," such comments would not warrant reversing a conviction.  See Young, 470 U.S. at 13.

Further, the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984).  A prosecutor may comment on the uncontradicted or uncontroverted nature of the evidence and may point out that there is an absence of evidence on a certain issue during closing argument to the jury.  See White v. State, 377 So.2d 1149 (Fla. 1980).  Additionally, prosecutorial comment upon a general lack of defense evidence is permissible.  See Smiley v. State, 395 So.2d 235 (Fla. 1st DCA 1981).

Reviewing the prosecutor's comment in the context of the entirety of the parties' closing arguments, the undersigned concludes Petitioner failed to show that defense counsel's failure to object to the prosecutor's comment was unreasonable.  The prosecutor's comment regarding the

absence of evidence, other than the presence of cocaine and "buy money" in the confidential informant's car after her exchange with Petitioner, cannot reasonably be construed as intended to comment on Petitioner's failure to testify, nor did the comment improperly shift the burden of proof to the defense. *See* Duncan v. Stynchcombe, 704 F.2d 1213, 1215–16 (11th Cir. 1983) (a comment on the failure of the defense, as opposed to that of the defendant, to counter or explain testimony presented or evidence introduced is not an infringement of the defendant's Fifth Amendment privilege). Further, the prosecutor's comment concerning the absence of evidence was a permissible response to defense counsel's argument that the only evidence produced by the State was the uncorroborated, unreliable testimony of the informant, who received personal gain as a result of assisting in Petitioner's prosecution, and defense counsel's argument that the State failed to produce evidence proving Petitioner's guilt beyond a reasonable doubt (*see* Ex. C at 176–83). Indeed, immediately prior to the prosecutor's commencing his closing argument, defense counsel argued:

> . . . I also ask you to do this, challenge, not out loud, but challenge [the prosecutor] to tell you how he has met his burden of proof without exclusive reliance on a woman who had something to gain. Find something corroborating, find something physical, find something real. They can do that for you.

(Ex. C at 184).

Furthermore, the prosecutor reminded the jury that before they could find Petitioner guilty, the State was required to prove the elements of the crime beyond a reasonable doubt (Ex. C at 185), and defense counsel reminded the jury, both before and after the prosecutor's closing argument, that the State bore the burden of proof (*id.* at 179, 182, 198), thus dispelling any suggestion that Petitioner was required to present any evidence or bear any burden of proof. Moreover, the trial court cured any suggestion that anyone but the State had the burden of proof by clearly instructing the jury on the following points: (1) to convict Petitioner, the State was required to prove the elements of the crime beyond a reasonable doubt, (2) Petitioner was not required to present evidence or prove anything, (3) if the jury had a reasonable doubt as to whether Petitioner committed the offense, they should find him not guilty, (4) a reasonable doubt as to guilt could arise from the evidence, conflict in the evidence, or lack of evidence, and (5) it was the jury's duty to decide what evidence was reliable (*id.* at 198–208). *See* Duncan, 704 F.2d at 1216 (prosecutor's comment on the failure of the defense to counter or explain the testimony presented or evidence introduced did

not shift burden of proof to the defendant, because any possible prejudice which might otherwise have resulted from the comments was cured by the court's instructions regarding the burden of proof); Simon, 964 F.2d at 1087 (although prosecutor's remarks were probably improper, the district court rendered any error harmless by the repeated instructions to the jury that the defendant had no burden to produce any evidence).

Petitioner failed to show that defense counsel's failure to object to the prosecutor's comment constituted deficient performance. Therefore, the state court's adjudication of Petitioner's claim was not an unreasonable application of Strickland.

## IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>6</u><sup>th</sup> day of January 2012.

<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**